IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

KRISTINA MARTINEZ, *GUARDIAN AD LITEM* FOR BRANDIE ANDERSON, An Incapacitated Adult,

      Plaintiff,

      v.                                            2:21-cv-1191-WJ-GJF

LEA REGIONAL HOSPITAL LLC
d/b/a LEA REGIONAL MEDICAL CENTER
et. al,

      Defendants.

**MEMORANDUM OPINION AND ORDER
GRANTING IN PART DEFENDANTS' PARTIAL MOTION TO DISMISS**

**THIS MATTER** is before the Court on Defendant Lea Regional Hospital's Motion to Dismiss Counts I, II, V, and VI of Plaintiff's Second Amended Complaint (Doc. 52). Plaintiff alleges Defendant's acts and omissions during its emergency medical treatment of Plaintiff caused her to remove her own eyes several hours later in a police holding cell. Doc. 44 (Second Amended Complaint, hereinafter "Complaint"). Defendant argues Plaintiff improperly pleads duplicative claims and attempts to shoehorn her professional medical negligence claim into inapplicable federal statutes. On that basis, Defendant moves to dismiss all of Plaintiff's claims except for negligent professional medical care in Count IV. After reviewing the pleadings and applicable law, the Court finds Plaintiff failed to state plausible claims for relief in Counts I, II, and V. The Court also finds Plaintiff stated a plausible claim for relief in Count VI. Accordingly, Defendant's Partial Motion to Dismiss (Doc. 52) is **GRANTED IN PART and DENIED IN PART**.

**BACKGROUND**

1

On the morning of December 18, 2019, Plaintiff presented to the Lea County Regional Medical Center ("LRMC") Emergency Department with "suicidal thoughts." Doc. 44 at 5.[1] Attending provider Frank Gonzales assessed Plaintiff and "placed various psychotic disorders on his differential diagnosis." *Id*. He administered one Xanax to Plaintiff. Over the course of her visit, Plaintiff "refused a blood draw, denied being suicidal, refused to sign discharge papers, and refused to leave." *Id*. Hospital staff contacted the Hobbs Police Department to have Plaintiff removed. She was taken into custody and booked at the Hobbs City Jail early that afternoon.

Two hours later, at the Hobbs Police Department's request, Emergency Medical Services transported Plaintiff to LRMC for "suicidal ideations." *Id.* at 6. Upon arrival Plaintiff reported that "she had recently used methamphetamine[], had not slept much in the past few days and felt anxious." *Id.* Plaintiff also told staff that she had recently been admitted to an inpatient psychiatric treatment facility in Roswell. Attending provider Frank Gonzales assessed Plaintiff for a second time and diagnosed her with an "acute psychotic break, acute anxiety disorder, depression, and drug-induced psychosis." *Id.* Despite telling staff that she had reported for a blood draw, Plaintiff refused to consent to blood testing or answer providers' questions. Plaintiff then left the Emergency Department against medical advice. Hospital security caught up with Plaintiff elsewhere on hospital grounds and asked her to leave. Plaintiff told security that she was suicidal.

Hospital security escorted Plaintiff back to the LRMC Emergency Department for her third visit. Her admitting diagnosis was "suicidal ideation." *Id*. The Emergency Department staff placed Plaintiff on a fifteen-minute suicide watch. They also performed a Suicide Risk Assessment and determined that Plaintiff "was verbalizing thoughts of harming herself without a plan." *Id.* at 7. Staff further ordered that Plaintiff undergo a mental health assessment by social worker Patricia

---

[1] For the purposes of Defendant's Motion to Dismiss, the Court uses Plaintiff's facts set forth in the Second Amended Complaint (Doc. 44), the operative version of the Complaint.

Garza. Ms. Garza conducted her assessment and concluded that Plaintiff "did not meet criteria for inpatient mental health care." *Id.* Late that evening, LRMC discharged Plaintiff into the care of her brother with discharge diagnoses of methamphetamine abuse and a urinary tract infection. Plaintiff was prescribed antibiotics and "advised to follow up with a guidance counselor the next day for continuation of care and referral to rehab." *Id.* LRMC's medical records indicated that Plaintiff's condition was "stable" upon discharge. *Id.*

After leaving LRMC, Plaintiff's brother took her to another local hospital, Nor Lea Hospital.[2] She was admitted with a psychotic episode diagnosis. Nor Lea staff began to evaluate Plaintiff but were unable to continue after Plaintiff attempted to hit a staff member. Hospital staff contacted police dispatch after the altercation. Lovington police arrived on scene, detained Plaintiff, and transported her to Lea County Detention Center ("LCDC") "for detox due to her erratic behavior." *Id.* at 9. Plaintiff arrived at LCDC for detoxification procedures at 12:16 a.m. on December 19. Between 8:30 a.m. and 9:30 a.m., while in an LCDC intake cell, Plaintiff gouged out her own eyes. Plaintiff is now permanently and completely blind in both eyes "and continues to receive medical care related to her injuries." *Id.* at 15.

**LEGAL AND JURISDICTIONAL STANDARD**

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Plaintiff's obligation to provide grounds for her entitlement

---

[2] Nor Lea Hospital is not a party to this lawsuit. *See* Doc. 44 at 1, 2-4.

to relief "requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 545. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

In reviewing a motion to dismiss, the Court must assume all the complaint's factual allegations are true, but it is not bound to accept as true legal conclusions, including any "legal conclusion couched as a factual allegation." *Id.* at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Accordingly, the Court "should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). In deciding whether the plaintiff's stated claim for relief is adequate, the Court views "the totality of the circumstances as alleged in the complaint in the light most favorable to [the plaintiff]." *Jones v. Hunt*, 410 F.3d 1221, 1229 (10th Cir. 2005). The essential question is whether the plaintiff has nudged his or her claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

This case is before the Court based on federal question subject-matter jurisdiction. 28 U.S.C. § 1331 ("[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). Plaintiff establishes federal question jurisdiction by asserting three federal law claims in her Complaint: violation of 18 U.S.C. § 1983 in Count III, violation of 42 U.S.C. § 12101 *et seq.* in Count V, and violation of 42 U.S.C. § 1395dd in Count VI. For the remaining claims, it is undisputed that the Court has supplemental jurisdiction over Plaintiff's state law claims asserted in Count I (negligent hiring, supervision, and training), Count II (ordinary negligence), and Count VI (negligent medical care and treatment) because they arise out of the same case or controversy as Plaintiff's federal law claims. *See* 28 U.S.C. § 1367

(district courts with original jurisdiction have supplemental jurisdiction over all other claims that are "so related to claims in the action . . . that they form part of the same case or controversy . . . ."). A federal court exercising supplemental jurisdiction applies the substantive law of the forum state to state law claims. *BancOklahoma Mortg. Corp. v. Capital Title Co., Inc.*, 194 F.3d 1089, 1103 (10th Cir. 1999). The Court will therefore apply federal law to Plaintiff's claims in Counts III, V, and VI and New Mexico state law to Plaintiff's claims asserted in Counts I and II.

Finally, the Court emphasizes that this Opinion only addresses Plaintiff's claims against Lea Regional Medical Center ("LRMC"). Plaintiff's additional claims against Lea County, Lea County police officers, and healthcare providers in their individual capacities are not at issue. Doc. 44 at 1. Moreover, this Opinion does not address all of Plaintiff's claims against Defendant LRMC—LRMC does not move to dismiss Plaintiff's claim in Count IV for negligent medical care and treatment. Doc. 44 at 27. In sum, the Court will apply federal and state law in analyzing whether five of the six claims Plaintiff asserts against Defendant LRMC satisfy the plausibility pleading standard of Rule 12(b)(6).

## DISCUSSION

Defendant moves under Rule 12(b)(6) to dismiss four claims as asserted against LRMC: (1) negligent hiring, supervision, and training; (2) ordinary negligence; (3) violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*; and (4) violation of the Emergency Medical Treatment and Labor Act ("EMTALA"), 42 U.S.C. § 1395dd. The Court addresses each claim in turn.

### I.  Plaintiff fails to state a plausible claim in Count I for negligent hiring, supervision, or training.

Plaintiff claims that LRMC is directly liable for "negligent hiring, supervision, and training" of healthcare staff and employees. Doc. 44 at 16. In support, Plaintiff asserts that LRMC

5

"knew, or reasonable should have known that some harm might be caused to [Plaintiff] due to their understaffing, lack of training, and supervision." *Id.* at 17. The Complaint specifically references two staff members: LRMC Nurse Practitioner Frank Gonzales and Licensed Independent Social Worker Patricia Garza. Mr. Gonzales performed three assessments of Plaintiff as the admitting physician in the LRMC Emergency Department. Ms. Garza performed one "mental health assessment consult" during Plaintiff's second visit to the LRMC Emergency Department. *Id*. at 7.

"Generally, a negligence claim requires the existence of a duty from a defendant to a plaintiff, breach of that duty, which is typically based upon a standard of reasonable care, and the breach being a proximate cause and cause in fact of the plaintiff's damages." *Herrera v. Quality Pontiac*, 2003–NMSC–018, ¶ 6, 134 N.M. 43, 48. To establish a negligent hiring, retention, supervision, or training claim, the Plaintiff must make a threshold showing that the Defendant was the employer of the negligent employee. NM R CIV UJI 13-1647. Viewed in a light most favorable to Plaintiff, she appears to allege that Patricia Garza and Frank Gonzales were employees of LRMC. Doc. 44 at 2-3. The Court will therefore assume as true that Ms. Garza and Mr. Gonzales were employees of LRMC for the purpose of analyzing Plaintiff's claims set forth in Count I.

First, The Court finds Plaintiff failed to plausibly plead a negligent hiring and retention claim against LRMC in Count I. To make out a negligent hiring or retention claim, Plaintiff must show "that the employee was unfit, considering the nature of the employment and the risk he posed to those with whom he would foreseeably associate, . . . and that the employer knew or should have known that the employee was unfit." *Valdez v.* Warner, 1987-NMCA-076, ¶ 11, 106 N.M. 305, 307. In the healthcare context, Plaintiff must show that LRMC "negligently failed to screen [the employee's] competency, or that it negligently retained him after it knew or should have known of matters involving his general competency." *Eckhardt. V. Charter Hosp. of Albuquerque*,

6

1998-NMCA-017, ¶ 41, 124 N.M. 549, 559. The thrust of Plaintiff's claim is that LRMC employees—namely Mr. Gonzales and Ms. Garza—failed to exercise reasonable care when evaluating and treating Plaintiff in the Emergency Department. Had they done "a proper observation" and evaluation, they would not have discharged Plaintiff and she therefore would not have injured herself in police custody several hours later. Doc. 61 at 7. Even if Plaintiff's complaint showed that an LRMC staff member negligently treated Plaintiff, it is devoid of any fact suggesting that a treating LRMC staff member had prior competency issues or that LRMC had knowledge of such issues. Plaintiff's only relevant allegations in the complaint are conclusory statements that LRMC engaged in "negligent hiring" and retained "inadequate or inappropriate medical support." Doc. 44 at 16. Plaintiff failed to show that LRMC had notice that a staff member was incompetent, for example, by "complaints or malpractice actions filed against him," or by any other means. *Diaz*, 1994-NMCA-108, ¶ 12 (granting summary judgment on corporate negligence claim because plaintiff failed to establish defendant's knowledge of treating physician's incompetence). Plaintiff's complaint contains no facts that could plausibly support a finding that LRMC's employees who treated Plaintiff were unfit, nor that LRMC had notice that the employees were unfit. Thus, her negligent hiring and retention claims do not "raise a right to relief above the speculative level" and must be dismissed pursuant to Rule 12(b)(6). *Twombly*, 550 U.S. at 555.

Second, the Court finds Plaintiff failed to plausibly plead a negligent training and supervision claim. To state a claim, Plaintiff must show that LRMC knew or reasonably should have known that its employees were unfit providers and that LRMC nonetheless failed to exercise reasonable care in training or supervising them, thereby causing Plaintiff's injuries. *Linkewitz v. Robert Heath Trucking, Inc.*, No. CV 13-0420 WPL/RHS, 2013 WL 12138884, at *6 (D.N.M. Aug. 13, 2013); *see also Los Ranchitos v. Tierra Grande, Inc.*, 1993-NMCA-107, ¶ 20, 116 N.M.

222, 228. The only allegations in Plaintiff's complaint that can be construed to support a negligent training or supervision claim are that LRMC maintained "inadequate or inappropriate medical support," and reasonably should have known that understaffing might harm Plaintiff. Doc. 44 at 16. Plaintiff again pleads no facts that suggest Mr. Gonzales, Ms. Garza, or any other LRMC staff members were unfit or unqualified to assess Plaintiff. Further, Plaintiff's does not specify how many providers were in the Emergency Department or plead any specific factual support for her claim that LRMC was understaffed. Plaintiff does not, for example, assert her medical care at LRMC was delayed due to understaffing or that no providers were available to attend to her. Without more, Plaintiff has not nudged her claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

For the reasons stated above, the Court concludes that Plaintiff's claims against LRMC in Count I must be dismissed.[3]

## II.     Plaintiff fails to state a plausible negligence claim in Count II.

In Count II, Plaintiff asserts LRMC "through its employees and agents owed [Plaintiff] a duty to meet the standard of care in treating her." Doc. 44 at 18. Plaintiff alleges that LRMC owed a duty "to use ordinary care and to possess and apply the knowledge, skill and care ordinarily used by reasonably well qualified healthcare providers . . . ." *Id.* Plaintiff argues that LRMC breached this duty by:

> [F]ailing to appropriately recognize and treat [Plaintiff's] psychosis and suicidality; failing to recognize and treat her high risk for self-harm; failing to admit her for hospitalization; failing to treat her with an anti-psychotic medication; failing to transfer her for admission to a psychiatric hospital; failing to stabilize her; failing

---

[3] The Court notes that Plaintiff also includes in Count I a blanket allegation that LRMC engaged in "negligent hiring, training, supervision, credentialing, evaluation, monitoring, or retention of healthcare employees, contractors, nurses and physicians on hospital staff; inadequate or inappropriate policies and procedures; inadequate or inappropriate medical support in a hospital; and any other manner revealed in discovery." Because Plaintiff presents Count I as claims for "negligent hiring, supervision, and training," the Court analyzes her claims under that framework. To the extent that Count I includes additional claims, the Court finds that they lack sufficient factual basis for the reasons articulated in this section.

> to recognize that [Plaintiff] lacked decisional capacity and intervening for her safety and protection; and any other manner revealed in discovery.

*Id.* at 19. Further, Plaintiff contends that had she "been appropriately treated and medically observed, it is more medically probable than not that she would not have removed her eyes." *Id.*

Defendant moves to dismiss Count II because it is duplicative of Plaintiff's medical malpractice claim in Count IV. In Count IV, Plaintiff asserts that LRMC is liable "through its employees and agents" for breaching its duty to provide "reasonably obtainable and necessary medical and mental health treatment." *Id.* at 28. Plaintiff asserts the exact same acts and omissions as specific grounds supporting breach in Count IV as it does in Count II. *Id.* Because the claims in Counts II and IV rest on identical facts and apply the same professional negligence standard of law, the Court will dismiss Count II as Duplicative of Count IV.

Claims may be dismissed pursuant to Rule 12(b)(6) when they are "duplicative of other claims in the suit." *See Sw. re, Inc. v. G.B. Invs. Reins. Co., Ltd.*, No. CIV 10-856 BB/WPL, 2011 WL 13114921 at *1-2 (D.N.M. June 17, 2011) (citations omitted). "Claims are duplicative when they are substantially the same as other claims in the suit." *Id.* Defendant argues that Plaintiff's purported ordinary negligence claim is substantially the same as her medical malpractice claim. The New Mexico Legislature intended that "malpractice claim" under the New Mexico Medical Malpractice Act be construed broadly. *Wilschinsky v. Medina*, 1989-NMSC-047, ¶ 28, 108 N.M. 511, 518. "[A] claim may be construed as a malpractice claim within the meaning of the [Medical Malpractice Act] if the gravamen of the third-party action is predicated upon the allegation of professional negligence by a practicing physician." *Christus St. Vincent Reg'l Med. Ctr. v. Duarte-Afara*, 2011-NMCA-112, ¶ 15 (internal quotation omitted).

In the interest of judicial efficiency, the Court will dismiss Plaintiff's claims asserted against LRMC in Count II as duplicative of those in Count IV. The Court recognizes that Plaintiff

pleads that LRMC has a "duty to use ordinary care" in Count II. However, Plaintiff asserts that LRMC breached that duty by employing providers who failed to meet the medical malpractice standard of care. The "gravamen" of the claim is thus predicated upon a professional medical negligence allegation. *Christus St. Vincent Reg. Med. Ctr.*, 2011-NMCA-112, ¶ 15. The Court can discern no substantive difference, nor did Plaintiff identify a difference, between her medical malpractice claim asserted against LRMC in Count IV and her negligence claim against LRMC in Count II. In fact, Plaintiff's language setting forth LRMC's purported breach is identical in both counts. Other than the inclusion of the phrase "ordinary care," the two claims are indistinguishable. As such, the Court finds Plaintiff's claim against LRMC in Count II is duplicative of its claim in Count IV and will be dismissed pursuant to Rule 12(b)(6).

### III.    Plaintiff's fails to state a plausible ADA claim in Count V.

In Count V, Plaintiff asserts that she had a mental health condition qualifying as a disability and claims that LRMC violated her rights under the ADA in two ways. First, she asserts that based on her disability, LRMC failed to accommodate her condition by not ensuring that it "had adequate systems in place to ensure that persons suffering from mental disabilities would be provided lawful and required services under the ADA." Doc. 44 at 30. She specifically cites that she was denied mental health care, medical care, and encounters with persons properly trained to deal with mental illness. *Id.* Second, Plaintiff asserts LRMC intentionally discriminated against her "with deliberate indifference and reckless disregard to [Plaintiff's] rights," by denying her required services under the ADA. *Id.*

LRMC moves to dismiss Plaintiff's ADA claim for two reasons. First, LRMC states it is not a public entity subject to Title II of the ADA. In response, Plaintiff requests leave to amend her claim to Title III, which applies to private hospitals that provide services to the public. For the

purposes of this Opinion, the Court will analyze Plaintiff's ADA claim as if she had properly asserted it under Title III. Second, LRMC argues Plaintiff failed to plausibly plead the elements of an ADA claim. Specifically, LRMC argues that Plaintiff did not allege: (1) that she had a qualifying disability; and (2) that LRMC discriminated against Plaintiff based upon her disability. The Court agrees that Plaintiff failed to plausibly allege discrimination on the basis of her disability.

In relevant part, Title III of the ADA provides that:

> [n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a). The Act identifies hospitals as private entities that are considered places of public accommodation for the purposes of Title III. *Id.* § 12181(7).

To state a claim for violation of Title III, "which authorizes private actions only for injunctive relief, not monetary damages," a plaintiff must establish that "(1) he or she is disabled within the meaning of the ADA; (2) that the defendants own, lease, or operate a place of public accommodation; and (3) that the defendants discriminated against the plaintiff within the meaning of the ADA." *Krist v. Kolombos Rest. Inc.*, 688 F.3d 89, 95-96 (2d. Cir. 2012). The parties agree that LRMC qualifies as a place of public accommodation. Only the first and third elements are at issue.

Turning to the first element, Plaintiff alleges sufficient facts suggesting that she had a qualifying disability under the ADA. "To satisfy the ADA's definition of disability, a plaintiff must (1) have a recognized impairment, (2) identify one or more appropriate major life activities, and (3) show the impairment substantially limits one or more of those activities." *Berry v. T-Mobile USA, Inc.*, 490 F.3d 1211, 1216 (10th Cir. 2007). The Tenth Circuit strictly interprets the phrase

"substantially limited" to "create a demanding standard for qualifying as disabled." *Id.* Plaintiff's complaint alleges she had a history of mental illness that was at one point severe enough to require inpatient psychiatric treatment. Plaintiff specifically alleges that "she had recently been in [a] Roswell psychiatric inpatient treatment facility," which she conveyed to LRMC medical staff. Doc. 44 at 6. Viewed in a light most favorable to Plaintiff, the Court finds it plausible to believe that Plaintiff's mental illness substantially limited one or more major life activities based upon her recent inpatient psychiatric treatment.[4] Thus, the Court declines to dispose of Plaintiff's ADA claim at the Motion to Dismiss stage on this basis.

With regard to the third element—that LRMC discriminated against Plaintiff within the meaning of the ADA—there are three recognized ways to establish a claim: "(1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation." *J.V. v. Albuquerque Pub. Sch.*, 813 F.3d 1289, 1295 (10th Cir. 2016). Plaintiff does not specify which type of ADA claim she makes, but the language in her complaint implicates the first and third categories: intentional discrimination and failure to accommodate. Under either approach, Plaintiff must show that her exclusion or denial of benefits was "by reason of [her] disability" *Ingram v. Clements*, 705 F. App'x 721, 725 (10th Cir. 2017) (quoting *J.V.*, 813 F.3d at 1295). To do so, a plaintiff must allege some affirmative facts suggesting that her disability was a determining factor in the discriminatory action. *Selenke v. Med. Imaging of Colo.*, 248 F.3d 1249, 1259 (10th Cir. 2001).

The Court finds that Plaintiff failed to plausibly allege that LRMC discriminated against her on the basis of her disability. Plaintiff asserts that "on the basis of her disability" LRMC denied

---

[4] Plaintiff asserts in her response brief that her mental health limited her "employment, housing, and self-care," Doc. 61 ("Plaintiff's Response"). However, the Court may only consider the sufficiency of Plaintiff's allegations "within the four corners of the complaint" in reviewing a Rule 12(b)(6) motion to dismiss. *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994).

her access to mental health care, medical care, "encounters with persons properly trained to deal with persons with mental illness," and proper accommodation. Doc. 44 at 30. Plaintiff's version of the facts show that she was evaluated three times by attending provider Frank Gonzales and once by social worker Patricia Garza. LRMC staff provided medication for Plaintiff, performed a suicide risk assessment, and a mental health assessment. She was also given antibiotics and advised to follow up with a guidance counselor for further care. Plaintiff was plainly not denied care, so it appears her argument is that she should have been admitted for further inpatient treatment. To make her claim proper under the ADA, Plaintiff "would need to allege that the Hospital . . . failed to treat [her] *on account of [her] need for treatment*." *Ramsey v. Sw Corr. Med. Grp., Inc.*, No. 18-cv-1845-WJM-KLM, 2019 WL 3252181, at * 17 (D. Colo. July 19, 2019) (dismissing plaintiff's ADA claims against hospital for failure to state a claim) (*emphasis* in original). Otherwise, Plaintiff is inappropriately attempting to plead a medical malpractice claim under the ADA. *See Fitzergald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1143-44 (10th Cir. 2005) ("[P]urely medical decisions . . . do not ordinarily fall within the scope of the ADA."). Plaintiff has alleged no facts suggesting LRMC denied treatment based upon Plaintiff's alleged disability. To the contrary, Plaintiff's allegations suggest that LRMC providers made a medical decision not to admit Plaintiff for further treatment because she "did not meet the criteria for inpatient mental health care," not because Plaintiff had a mental illness. Doc. 44 at 7. The Court finds no plausible basis upon which to infer that LRMC discriminated against Plaintiff based upon her alleged disability.

For the reasons stated above, the Court finds that Plaintiff failed to plead a plausible ADA claim against LRMC in Count V and it will therefore be dismissed under Rule 12(b)(6). Plaintiff requests leave to amend her complaint "so that the claim can be correctly identified as a violation of Title III of the ADA." Doc. 61 at 10. Pursuant to the analysis above, Court finds that Plaintiff's

proposed amendment would be futile because her claim would be deficient even if brought under Title III.[5] *See Watson ex rel. Watson v. Beckel*, 242 F.3d 1237, 1239-40 (10th Cir. 2001) ("A proposed amendment is futile if the complaint, as amended, would be subject to dismissal for any reason"). Plaintiff's request is therefore denied.

### IV. Plaintiff pleaded a plausible EMTALA failure to stabilize claim in Count VI.

In Count VI, Plaintiff asserts that LRMC failed to screen and stabilize her in violation of the Emergency Medical Treatment and Labor Act. Congress originally enacted EMTALA "to address the problem of 'dumping' patients in need of medical care but without medical insurance," although the statute guarantees the same rights to insured and uninsured individuals. *Phillips v. Hillcrest Med. Ctr.*, 244 F.3d 790, 796 (10th Cir. 2001). Hospitals have two primary obligations under EMTALA. "First, the hospital must conduct an initial medical examination to determine whether the patient is suffering from an emergency medical condition." *Id.* Second, if an emergency medical condition exits, the hospital must "stabilize the patient before transporting him or her elsewhere." *Id.* Plaintiff asserts LRMC failed to do both.

#### A. Plaintiff failed to state an EMTALA Medical Screening claim.

Plaintiff first claims LRMC improperly screened her because staff members did not evaluate her for a "long enough time to complete a proper observation." Doc. 44 at 32. Had they conducted a more exhaustive screening, Plaintiff argues LRMC would have recognized her psychosis and suicidal ideations as emergency medical conditions. However, Plaintiff fails to allege that LRMC did not follow its own standard screening procedure, and as such, her claim is deficient.

---

[5] The Court also declines Plaintiff's blanket request to amend her complaint for a third time "to cure any defects." Doc. 61 at 17. Plaintiff's one-sentence contingent request, "lacking a statement for the grounds for amendment and dangling at the end of her memorandum, [does] not rise to the level of a motion for leave to amend." *Calderon v. Kan. Dep't of Soc. & Rehab. Servs.*, 181 F.3d 1180, 1187 (10th Cir.1999).

The EMTALA medical screening requirement is set forth in 42 U.S.C. § 1395dd(a): "the hospital must provide for an appropriate medical screening examination within the capability of the hospital's emergency department." An "appropriate medical screening examination" requires that the hospital "apply uniform screening procedures to all individuals coming into the emergency room." *Phillips*, 244 F.3d at 797. A hospital's obligation under EMTALA "is measured by whether it treats every patient perceived to have the same medical condition in the same manner." *Id.* "This narrow interpretation ties the statute to its limited purpose, which was to eliminate patient-dumping and not to federalize medical malpractice." *Ingram v. Muskogee Reg'l Med. Ctr.*, 235 F.3d 550, 552 (10th Cir. 2000). EMTALA thus imposes liability when hospitals fail to uniformly screen each patient perceived to have the same medical condition, not when the hospital's uniform screening procedure is insufficient to detect an emergency medical condition. *Phillips*, 244 F.3d at 797.

Plaintiff's only allegation is that LRMC's screening was inadequate, not that it varied from LRMC's typical screening procedures or that she was treated differently from similarly situated patients. Plaintiff claims that "[t]he short time she was at LRMC was not long enough time to complete a proper observation," which caused providers to underestimate her suicidality and risk for self-harm. Doc. 44 at 7-8. EMTALA provides no remedy for claims that a hospital's screening procedure was inadequate, so long as "its standard screening procedure is applied uniformly" to all similarly situated patients. *Repp v. Anadarko Mun. Hosp.*, 43 F.3d 519, 522 (10th Cir. 1994). Plaintiff does not allege her examinations did not conform to LRMC's screening procedure. To the contrary, the Complaint suggests LRMC screened Plaintiff in a similar manner during each of her three visits to the Emergency Department. On each visit, admitting provider Dr. Frank Gonzales performed a preliminary assessment, gave Plaintiff an admitting diagnosis, and referred her for further treatment. *See* Doc. 44 at 5, ¶ 22-23; *Id.* at 6, ¶ 25-27, 29; and *Id.* at 7, ¶ 30-32. The

15

Court finds no plausible basis to infer LRMC did not follow its own standard screening procedures. As such, Plaintiff's EMTALA claim for failure to provide appropriate medical screening fails.

**B. Plaintiff alleges a plausible EMTALA failure to stabilize claim.**

Plaintiff last asserts that her acute psychosis and suicidality constituted an emergency medical condition and LRMC discharged her stabilization in violation of EMTALA. The Court finds that Plaintiff's allegations amount to a plausible failure to stabilize claim.

Under EMTALA, if a patient "comes to a hospital and the hospital determines that the individual has an emergency medical condition," then the hospital must either: (1) provide "for such further medical examination and such treatment as may be required to stabilize the medical condition"; or (2) transfer the patient to another medical facility. 42 U.S.C. § 1395dd(b). If a patient "has an emergency medical condition which has not been stabilized," then the hospital may only transfer or discharge the patient if it obtains the patient's consent or completes a certificate indicating the transfer will be beneficial to the patient and is appropriate. *Id.* § 1395dd(c).

Because EMTALA was intended to address patient dumping and not to federalize medical malpractice, a plaintiff can only recover for failure to stabilize if she shows the hospital had "actual knowledge of the individual's unstabilized emergency medical condition." *Urban v. King*, 43 F.3d 523, 526 (10th Cir. 1994). Accordingly, to state an EMTALA failure to stabilize claim, a plaintiff must show: (1) the patient had an emergency medical condition; (2) the hospital had actual knowledge of that condition; (3) that patient was not stabilized before transfer; and (4) prior to transfer of the unstable patient, the transferring hospital did not obtain proper consent or follow appropriate certification procedures. *Baber v. Hospital Corp. of America*, 977 F.2d 872, 883 (4th

16

Cir. 1992).[6] It is undisputed that LRMC did not obtain consent or complete a transfer certificate prior to discharging Plaintiff. Thus, the Court focuses its inquiry on elements one through three.

The threshold question is whether Plaintiff plausibly alleged she had an emergency medical condition. The Court concludes she did. An emergency medical condition is defined as:

> a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in—
>
> (i)  placing the health of the individual . . . in serious jeopardy,
> (ii) serious impairment to bodily functions, or
> (iii) serious dysfunction of any bodily organ or part . . . .

42 U.S.C. § 1395dd(e)(1)(A). A mental health emergency that poses a "legitimate possibility that the patient might commit suicide would appear to 'place the mental health of the individual . . . in serious jeopardy,'" and could qualify as an emergency medical condition under EMTALA. *Moses v. Providence Hosp. and Med. Ctrs., Inc.*, 561 F.3d 573, 585 (6th Cir. 2009). Plaintiff asserts she suffered from acute psychosis and suicidality upon admission at LRMC. Doc. 44 at 32-33. The plain language of § 1395dd and the Sixth Circuit's reasoning in *Moses* suggest that Plaintiff's alleged condition qualifies as an emergency medical condition under EMTALA.

Next, the Court finds Plaintiff plausibly alleged LRMC had actual knowledge of her psychosis and suicidality during Plaintiff's visits to the Emergency Department, as evidenced by her diagnoses. According to Plaintiff, she was transported from Hobbs Jail to LRMC by EMS for "suicidal ideations." Doc. 44 at 6. She was then given an admitting diagnosis of "acute psychotic break" and "drug induced psychosis" by LRMC provider Frank Gonzales. *Id.* When Plaintiff was

---

[6] Defendant LRMC mistakenly cites *Phillips v. Hillcrest Med. Ctr.*, 244 F.3d 790, 796 (10th Cir. 2001) for the proposition that a plaintiff must also allege disparate treatment to state an EMTALA failure to stabilize claim. *See* Doc. 85 at 8. The holding Defendant cites expressly applies to 42 U.S.C. § 1395dd(a), EMTALA's screening provision. The Court could locate no authority stating that disparate treatment is an element of an EMTALA failure to stabilize claim.

17

noncooperative with LRMC staff and security asked her to leave, Plaintiff responded that "she was suicidal." *Id.* Shortly thereafter, Plaintiff was readmitted to the Emergency Department with a diagnosis of "suicidal ideation" *Id.* LRMC's diagnoses suggest that the hospital had actual knowledge that Plaintiff was suicidal and suffering from psychosis, at least at the time she was admitted to the emergency department. LRMC was thus obligated under EMTALA to "stabilize the patient before transfer or release." *Ward v. Lutheran Med. Ctr.*, 769 F. App'x. 595, 599 (10th Cir. 2019). Plaintiff's claim thus turns on whether LRMC stabilized Plaintiff and relatedly, whether LRMC actually knew Plaintiff was unstable at the time she was discharged.

The Court finds that Plaintiff plausibly alleged that her emergency medical condition was not stabilized prior to discharge. EMTALA defines "to stabilize" as meaning "to provide such medical treatment of the condition as may be necessary to assure, within reasonable medical probability, that no material deterioration of the condition is likely to result from or occur during the transfer [or discharge] of the individual from a facility." 42 U.S.C. § 1395dd(e)(3)(A). As stated above, LRMC diagnosed Plaintiff with suicidal ideation, acute psychotic break, and drug-induced psychosis. Plaintiff asserts that the combination her "psychosis, suicidality, and recent hospitalization," all of which were conveyed to LRMC, put her "at very high risk for self-harm." Doc. 44 at 8. In light of Plaintiff's serious risk for self-harm, it is plausible that a 15-minute suicide watch and two mental health assessments were not enough to reasonably assure Plaintiff's condition would not deteriorate upon discharge. Plaintiff suggests she may have needed anti-psychotic medication and overnight observation to become stabilized. Doc. 44 at 8. Taking Plaintiff's facts as true, it is plausible to infer that Plaintiff's emergency medical condition was unstabilized at discharge.

18

Finally, the Court concludes Plaintiff alleges facts sufficient to support an inference that LRMC had actual knowledge Plaintiff was unstable at the time of discharge. Plaintiff asserts that her LRMC medical records state, "she refused a blood draw so there's nothing else we can do." Doc. 44 at 8. Plaintiff's allegation tends to show that an LRMC staff member knew Plaintiff needed further treatment, but recommended she be discharged anyway. If Plaintiff establishes that as true, she may be able to show in conjunction with other evidence that LRMC discharged Plaintiff with actual knowledge that her condition was unstabilized.[7]

Plaintiff's allegations plausibly suggest she was diagnosed with an emergency medical condition by LRMC and discharged prior to stabilization. Although it is less clear to the Court whether LRMC had actual knowledge that Plaintiff's condition was unstabilized at discharge, Plaintiff has alleged facts that, if proved, may serve as a basis her claim. Moreover, a plaintiff need not establish every element of a prima facie case in her complaint to survive a 12(b)(6) Motion to Dismiss. *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012). At this stage in the proceeding, the Court concludes that Plaintiff has alleged sufficient facts to support her EMTALA failure to stabilize claim in Count VI.

## CONCLUSION

Plaintiff stated a plausible claim for relief against Defendant LRMC under EMTALA for failure to stabilize in Count VI. Plaintiff failed to state plausible claims for relief against Defendant LRMC in Counts I, II, and V. Plaintiff has already twice amended her complaint and failed to articulate grounds for further amendment. As such, the Court dismisses with prejudice Plaintiff's

---

[7] The Court notes that Plaintiff alleges her LRMC medical records list her condition as "stable" upon discharge from LRMC at 01:59 a.m. Plaintiff appears to dispute the accuracy of LRMC's determination in part because she alleges she was already at Nor Lea Hospital when LRMC records indicate she was discharged. In any event, LRMC's purported determination that Plaintiff was stable is not dispositive in light of Plaintiff's other factual allegations, which the Court must accept as true.

claims against LRMC in Counts I and V pursuant to Rule 12(b)(6).[8] The Court dismisses without prejudice the claims asserted in Count II as duplicative of Count IV. The Court also dismisses the screening claim but declines to dismiss the failure to stabilize claim of Count VI.

**IT IS THEREFORE ORDERED** that Defendant Lea Regional Hospital LLC's Partial Motion to Dismiss (Doc. 52) is **GRANTED IN PART and DENIED IN PART** for the reasons stated in this Opinion.

_____
WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE

---

[8] "A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile." *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006). As discussed, Plaintiff's proposed amendment of her ADA would be futile. Moreover, after two amendments, Plaintiff's three other claims remain deficient, and she has failed to articulate grounds for further amendment.